IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Joe Hand Promotions, Inc., | C/A No. 0:11-cv-02438-MBS |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| Double Down Entertainment, LLC d/b/a Hoopers Bar & Grill, Binh D. Thai, Kenneth J Kobulinsky, and Angel Ruiz, | |
| Defendants. | |

On September 9, 2011, Joe Hand Promotions, Inc. ("Plaintiff") filed an action in this court against Double Down Entertainment, LLC, d/b/a Hoopers Bar & Grill ("Defendant Double Down"); Binh D. Thai; Kenneth J. Kobulinsky; and Angel Ruiz (collectively "the individual Defendants"). ECF No. 1. In its complaint, Plaintiff asserts claims under the Communications Act, 47 U.S.C. § 605 and the Cable Communications Policy Act, 47 U.S.C. § 553, as well as a state law claim for conversion. *Id.* Defendants did not originally file an answer or otherwise respond to Plaintiff's complaint, and on October 31, 2011, the clerk entered default against Defendants. ECF Nos. 15 & 17. Plaintiff filed a motion for default judgment on November 17, 2011. ECF No 18. On December 7, 2011, Defendants filed a motion to set aside the default judgment, which the court granted on March 23, 2012. ECF Nos. 20 & 23. On March 26, 2012, Defendants filed an answer and counterclaim, alleging a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10, et seq. ECF No. 24. On October 3, 2012, the court granted Plaintiff's motion to dismiss Defendants' SCUTPA counterclaim. ECF No. 38. The case was then stayed, and

the stay was lifted on June 12, 2013. After the stay was lifted, a motion for summary judgment was filed by the individual Defendants, ECF No. 66, and a motion for summary judgment was filed by Plaintiff, ECF No. 67. The court held a hearing addressing both of these motions on February 21, 2014.

## I. FACTUAL BACKGROUND

Defendant Double Down is a limited liability company doing business as Hoopers Bar & Grill in Rock Hill, South Carolina. ECF No. 1 at 2. Individual Defendants Binh D. Thai, Angel Ruiz, and Kenneth J. Kobulinsky are the sole principals and members of Defendant Double Down. *Id.* Plaintiff is a Pennsylvania corporation engaged in the commercial distribution of televised sporting events. *Id.* at 3. Plaintiff purchased the exclusive television distribution rights to "*Ultimate Fighting Championship 103: Rich Franklin v. Vitor Belfort*" ("the Program"), a fight that took place on September 19, 2009 via closed-circuit television. *Id.* Plaintiff entered into sublicensing agreements with various entities throughout North America, including persons and entities within South Carolina, through which it granted those entities the right to publicly exhibit the Program to customers within their commercial establishments (e.g., hotels, racetracks, casinos, bars, taverns, restaurants, and social clubs). *Id.* at 3. Plaintiff did not sublicense the Program to Defendants. Based on the 90-person capacity of Defendants' establishment, the cost of such a sublicense would have been $1,100. ECF No. 67-4.

On September 19, 2009, an investigator for Plaintiff, Scott Bernard, visited Hoopers Bar & Grill from approximately 11:24 p.m. until approximately 12:45 a.m., during which time Mr. Bernard's affidavit indicates that numerous televisions in Hoopers Bar & Grill displayed the Program. ECF No. 67-5 and 2-3. Specifically, Mr. Bernard's affidavit indicates that of the ten

televisions inside the establishment, five displayed the Program. *Id.* Further, Mr. Bernard's affidavit indicates that of the five televisions outside on the patio of the establishment, two displayed the Program. *Id.* While the Program was being displayed, Mr. Bernard contends that there were 32 patrons inside and 20 patrons outside. *Id.* Based on these observations, Plaintiff's complaint alleges that Defendants exhibited the Program unlawfully, without authorization, and with full knowledge that the Program was not to be intercepted, publicized, or exhibited without the appropriate license. ECF No. 1 at 3. Plaintiff further alleges that the individual Defendants controlled and/or authorized the misconduct to advance their financial interests. *Id.*

Defendants concede that the Program was broadcasted on televisions in Hoopers Bar & Grill on September 19, 2009. ECF No. 66-1. Defendants ordered the Program from Rock Hill Telephone Company, now known as Comporium Communications. ECF No. 67-3 at 14. To evidence this transaction, Defendants provide a document entitled "Customer Bill Printout" from Comporium Communications which indicates that Defendants paid a $44.99 fee for "PPV UFC 103 Franklin" on September 19, 2009, which corresponds to the date and subject of the Program. ECF No. 24-1 at 2. Defendants concede that they are "without sufficient knowledge" as to whether Comporium Communications was authorized by Plaintiff to transmit the Program. ECF No. 66-1 at 1. However, Defendants contend that they had no knowledge or belief that the broadcast of the Program at Hoopers Bar & Grill could potentially violate any laws. ECF No. 66.

## II. LEGAL STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment bears the burden of initially coming forward and

demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless sufficient evidence exists favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

### III. DISCUSSION

**A.    Applicable Legal Authority**

The relevant authorities for the purposes of the two pending motions for summary judgment are the Communications Act, 47 U.S.C. § 605 ("Section 605"), and the Cable Communications Act, 47 U.S.C. § 553 ("Section 553"). "These two statutory schemes provide relief for the alternate means of reception—[satellite and cable], respectively." *Joe Hand Promotions, Inc. v. Sheedy*, 4:08-CV-1797-TLW-TER, 2011 WL 4089534, at *3 (D.S.C. July 29, 2011), *report and recommendation adopted*, CIV.A. 4:08-1797-TLW, 2011 WL 4101273 (D.S.C. Sept. 13, 2011). More specifically, Section 605 prohibits the use of equipment for the purpose of unauthorized decryption of satellite cable programming while Section 553 prohibits the unauthorized interception or receipt of cable programming. *See* 47 U.S.C. § 605, 47 U.S.C. § 553.

Section 605, which provides relief for the alternate means of reception via satellite, reads in relevant part as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own

> benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto

47 U.S.C. § 605(a). Similarly, Section 553, which provides relief for the alternate means of reception via cable, provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553. Both Section 605 and Section 553 permit any aggrieved party to bring suit against the violator in federal court.[1] *See* 47 U.S.C. § 605(e)(3)(A); 47 U.S.C. § 553(c)(1). Further, both Section 605 and Section 553 are strict liability statutes. *See J & J Sports Prods., Inc. v. Delgado*, CIV. 2:10-2517 WBS, 2012 WL 371630, at *3 (E.D. Cal. Feb. 3, 2012).

In its motion for summary judgment and at the hearing, Plaintiff indicated that because the record contains evidence of the utilization of cable technology in the alleged violation, Plaintiff requests "that liability be found under section 553" and not Section 605.[2] ECF No. 67-1 at 5. Thus, only Section 553 need be considered when assessing the pending motions for summary judgment.

---

[1] While an aggrieved party is not defined in Section 553, Section 605 defines an "aggrieved party" to include "any person with proprietary rights in the intercepted communication by wire or radio." 47 U.S.C. § 605(d)(6).

[2] This election is appropriate, as Plaintiff cannot recover for damages under both Section 553 and Section 605. *See Kingvision Pay-per-View, Ltd. v. Perez*, 06CIV.3613(DAB), 2008 WL 3982881, at *3 (S.D.N.Y. Aug. 27, 2008) ("When a defendant has been found to have violated both sections 553 and 605 of the Communications Act, the plaintiff may elect to recover either actual or statutory damages under either, but not both, of those statutes.").

**B.     Individual Defendants' Motion for Summary Judgment**

Defendants' motion for summary judgment seeks summary judgment as to the three individual Defendants. To support their motion for summary judgment, Defendants contend that Plaintiff cannot recover against the individual Defendants because Plaintiff "seeks to pierce the corporate shell as to those Defendants" without demonstrating the necessary factors to pierce the corporate veil in South Carolina. ECF No. 66 at 7. However, Plaintiff contends that the traditional corporate veil analysis is not applicable in piracy causes of actions under Section 605 or Section 553. ECF No. 69 at 4.

With respect to the applicable standard for individual liability in a piracy action pursuant to Section 605 and Section 553, courts in this district have recognized that in order to hold an individual defendant personally liable for violations of Section 605 or Section 553, "[t]he Plaintiff must show that the corporate officer had a 'right and ability to supervise the violations, and that [he] had a strong financial interest in such activities.'" *J & J Sports Prods., Inc. v. J.R. 'Z Neighborhood Sports Grille, Inc.*, C.A.2:0903141DCNRSC, 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010), *report and recommendation adopted*, CA2:09-3141 DCN, 2010 WL 1838428 (D.S.C. May 6, 2010). *See also J & J Sports Prods., Inc. v. City Grill & Sports Bar, LLC*, 4:12-CV-01134-RBH, 2013 WL 5945680, at *3 (D.S.C. Nov. 6, 2013) (*J & J Sports Prods. II*) ("To hold an individual defendant liable [in an action pursuant to Section 605 or Section 553] in an individual capacity, Plaintiff must demonstrate that the defendant authorized the violation or had both 'a right and ability to supervise' the violations and a strong financial interest in such activities."). Numerous district courts in the Fourth Circuit have recognized the applicability of this standard to Section 553 actions. *See J & J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 589 (D. Md. 2012) ("[T]he standard for

individual liability under the Cable Act is that the defendant 'had supervision or control over the infringing activities, or that the person reaped some commercial benefit' from the violation'"); *Joe Hand Promotions, Inc. v. Mehovic*, 1:12CV267, 2013 WL 3155355, at *4 (W.D.N.C. June 20, 2013) ("[A]n individual defendant may be held liable pursuant to Section 553 and Section 605 where the individual has 'the right and ability to supervise the violations and a strong financial interest in the activity'"); *Sky Cable, LLC v. Coley*, 5:11CV00048, 2013 WL 3517337, at *20 (W.D. Va. July 11, 2013) ("To hold [an individual defendant] liable in his individual capacity under § [553], [the plaintiff] must show that he had a right and ability to supervise the violations, and that [ ]he had a strong financial interest in such activities.").

An inquiry into an individual's supervisory abilities and financial interests is similar to the inquiry used to determine vicarious liability in copyright infringement actions in the Fourth Circuit. *See CoStar Group, Inc. v. LoopNet, Inc.,* 373 F.3d 544, 550 (4th Cir.2004) (stating, in a copyright infringement action, that "[u]nder a theory of vicarious liability, a defendant who 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities' is . . . liable"). Courts have recognized that applying the standard for vicarious liability in a copyright infringement action to actions under Section 605 and Section 553 is more appropriate than a corporate veil analysis, as "47 U.S.C. § 605 [and 47 U.S.C. § 553], and the rights [they are] intended to protect, are analogous to the rights protected under the Copyright Act." *Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731, at *3 (S.D. Fla. Apr. 16, 2012). Pursuant to this reasoning, the court finds that the appropriate inquiry with respect to the liability of the individual Defendants under Section 553 is whether the individual Defendants "authorized the violation or had both 'a right and ability to supervise' the violations and a strong financial interest in such activities."

*J & J Sports Prods. II,* 2013 WL 5945680, at *3.

Using this standard, the court finds that summary judgment in favor of the individual Defendants is not appropriate. Defendants' motion for summary judgment fails to address the critical inquiry of whether the individual Defendants "authorized the violation or had both a right and ability to supervise the violations and a strong financial interest in such activities." *Id.* Instead, Defendants' motion recites law relevant to a corporate veil analysis in South Carolina. Additionally, Defendants' motion is devoid of specific citations to the record with respect to the issue of the individual Defendants' supervision of and financial interests in the broadcast of the Program. A movant for summary judgment bears the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted). The court finds that Defendants have failed to sustain this burden.

Accordingly, Defendants' motion for summary judgment is denied.

**C.    Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment seeks summary judgment on its Section 553 claim and state law conversion claim.[3] Defendants did not file a response in opposition to Plaintiff's motion for summary judgment. Pursuant to Local Civil Rule 7.06, "[i]f no memorandum in opposition is filed within fourteen (14) days of the date of service, the Court will decide the matter on the record and such oral argument as the movant may be permitted to offer, if any." Local Civil

---

[3] As previously discussed, Plaintiff elected to proceed on its Section 553 claim instead of its Section 605 claim.

Rule 7.06 D.S.C. Thus, the court will rely on the record and the arguments presented at the hearing in its disposition of Plaintiff's motion for summary judgment.

    1.    <u>Plaintiff's Section 553 Claim</u>

Plaintiff seeks summary judgment on its Section 553 claim against Defendant Double Down and against the individual Defendants. Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553. Section 553 "is a strict liability statute and precludes a good faith defense." *Joe Hand Promotions, Inc. v. Dock St. Enterprises, Inc.*, CIV.A. WMN-11-1973, 2011 WL 6141058, at *4 (D. Md. Dec. 8, 2011). Thus, when considering a Section 553 claim, "knowledge is only relevant when assessing damages." *Id.*

    ***a.***    ***Defendant Double Down***

To support its motion for summary judgment against Defendant Double Down, Plaintiff cites to the following facts in the record. Plaintiff owned the exclusive commercial distribution rights for the Program. *See* ECF No. 76-1; ECF No. 67-4. Plaintiff did not sublicense the Program to Defendants, and Defendants did not pay a licensing fee to Plaintiff to receive the Program in their commercial establishment. *See* ECF No. 76-1; ECF No. 67-4. The licensing fee for the Program in Defendants' establishment, which has a 90-person capacity, would have been $1,100. ECF No. 67-4. The Program was broadcasted on several televisions at Defendants' establishment on September 19, 2009. ECF Nos. 67-5.

Defendants did not file a response or present any arguments at the hearing disputing these facts. A review of these undisputed facts indicates that Plaintiff owned the exclusive commercial

9

rights to the Program, Plaintiff did not sublicense these commercial rights to Defendants, and Defendants broadcasted the Program in their commercial establishment. Based on these undisputed facts, the court finds that Defendants' broadcast of the Program violated Section 553. *See J & J Sports Prods., Inc. v. Morales*, 1:10-CV-01694-AWI, 2011 WL 6749080, at *3 (E.D. Cal. Dec. 22, 2011) (granting summary judgment on a Section 553 claim based on the following facts: "(1) Defendant received *the Program* at Dominic's on September 19, 2009, (2) *the Program* was offered over a cable system and (3) Defendant was not specifically authorized to receive *the Program* by law and (4) Plaintiff is a 'person aggrieved' under section 553"); *J & J Sports Prods., Inc. v. Hernandez*, 1:11CV749, 2013 WL 5937909, at *2 (M.D.N.C. Nov. 5, 2013) (recognizing that "[e]stablishing a violation of § 553 requires proof of the same elements as § 605," which entails a showing that "(1) Defendant did not obtain a license from Plaintiff to receive the signal for the Program at [the Restaurant], (2) the Program was unlawfully received and exhibited at [the Restaurant] on [September 19, 2009,] and (3) Plaintiff is a 'person aggrieved' under section [553].").

To the extent Defendants provide evidence of payment of a $44.99 fee to Comporium Communications for the Program, the court finds that this evidence does not absolve Defendant Double Down of liability under Section 553. *See J & J Sports Prods., Inc. v. Mandell Family Ventures, LLC*, 3:10-CV-02489-BF, 2012 WL 4757694 (N.D. Tex. Oct. 5, 2012) (granting summary judgment in favor of the exclusive licensee under Section 553 despite the defendant paying a $54.95 fee to its cable provider, Time Warner Cable, to broadcast the licensed event in its commerical establishment); *Joe Hand Promotions, Inc. v. Jorkay, LLC*, 5:10-CV-536-D, 2013 WL 2447867, at *2 (E.D.N.C. June 5, 2013) (recognizing, under Section 605, that "[a]lthough defendants purchased the event from DirecTV [for a $54.95 fee], they do not avoid liability for broadcasting the event at

10

their establishment without the authorization of the exclusive licensee, Joe Hand."). Indeed, because Plaintiff owned the exclusive commercial rights to the Program, Comporium Communications could not lawfully authorize the Defendants to broadcast the Program in their commercial establishment. *See Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co. L.P.*, 217 F. Supp. 2d 466, 468 (S.D.N.Y. 2002) ("For a cable operator lawfully permitted to broadcast a fight to residential customers to allow its services to be used to permit commercial establishments to tap-in to the broadcast without paying the party that holds the exclusive right to broadcast the fight commercially is not an authorization a cable operator can give, under § 553 or otherwise."). Thus, the court finds that Defendant Double Down "intercept[ed] or receive[d] . . . any communications service offered over a cable system" without being "specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law" in violation of Section 553. *See* 47 U.S.C. § 553. As such, the court finds that summary judgment is appropriate on Plaintiff's Section 553 claim against Defendant Double Down.

Accordingly, Plaintiff's motion for summary judgment is granted with respect to its Section 553 claim against Defendant Double Down.

### b.     *Individual Defendants*

Despite granting Plaintiff's motion for summary judgment as to Defendant Double Down, an additional analysis must be undertaken with respect to potential liability for the individual Defendants under Section 553. As previously discussed in conjunction with the individual Defendants' motion for summary judgment, in order to hold an individual Defendant liable under Section 553, "[t]he Plaintiff must show that the corporate officer had a 'right and ability to supervise the violations, and that [he] had a strong financial interest in such activities.'" *J.R. 'Z Neighborhood*

11

*Sports Grille, Inc.*, 2010 WL 1838432, at \*2. To support such a showing here, Plaintiff highlights undisputed evidence in the record indicating that individual Defendants Binh D. Thai, Kenneth J. Kobulinsky, and Angel Ruiz are the sole members and principals of Defendant Double Down. *See* ECF No. 24 at 2, ECF No. 67-3 at 5. Based on this undisputed evidence, Plaintiff contends that the individual Defendants "are the only persons with a right and ability to supervise the violation and the only persons with a financial interest in the activities of the establishment." ECF No. 67-1 at 9.

The court agrees that individual liability is appropriate in this case. As the sole members and principals of Defendant Double Down, it follows that the individual Defendants were the only parties with the right and ability to supervise the actions of Defendant Double Down. Further, it follows that the individual Defendants had a financial interest in broadcasting the Program. Indeed, in Defendants' Responses to Plaintiff's Requests for Admission, Defendants admit that "[the Program] was televised . . . with the intent of meeting the desires or interest of the clientele . . . [and] [b]y meeting those desires and interest . . . [the LLC] . . . hoped, among other ends, to serve its customers and *received profits therefrom*." ECF No. 67-3 at 22 (emphasis added). The court finds that the undisputed evidence indicates that the individual Defends had the right and ability to supervise the broadcast of the Program and had a financial interest in the broadcast of the Program.

Further, Defendants filed no response and presented no evidence at the hearing disputing the supervisory abilities or financial interests of the individual Defendants. *See J.R. 'Z Neighborhood Sports Grille, Inc*., 2010 WL 1838432, at \*2 (entering default judgment as to an individual defendant under Section 605 where "[t]he said Defendant has not denied that he had supervisory control over the infringing activities and a financial stake in the business"). As such, the court finds that summary judgment is appropriate on Plaintiff's Section 553 claim against the individual Defendants.

Accordingly, Plaintiff's motion for summary judgment is granted with respect to its Section 553 claim against the individual Defendants Binh D. Thai, Kenneth J. Kobulinsky, and Angel Ruiz.

### c.     *Damages Under Section 553*

Under Section 553, an aggrieved party may recover either actual or statutory damages. *See* 47 U.S.C. § 553(c)(3)(A). Statutory damages are more appropriate where, as here, actual damages are difficult to prove. *See G & G Closed Circuit Events, LLC v. Camden Wing Shack*, *LLC*, CA 3:12-2933-JFA-SVH, 2013 WL 6388481, at *5 (D.S.C. Dec. 6, 2013). Section 553 permits statutory damages "for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553 (c)(3)(A)(ii). If the court finds the violation was committed willfully and for the purposes of commercial advantage or private financial gain, the court, in its discretion, may increase the award of damages "by an amount of not more than $50,000." 47 U.S.C. § 553(c)(3)(B). However, "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." 47 U.S.C.§ 553(3)(A)(C).

"Nationwide, courts have used various methods of determining an appropriate amount of statutory damages." *Joe Hand Promotions, Inc. v. Rascals Cafe, LLC*, CA 4:11-2135-TLW, 2012 WL 4762142, at *5 (D.S.C. Aug. 31, 2012), *report and recommendation adopted*, CA 4:11-2135-TLW-KDW, 2012 WL 4762452 (D.S.C. Oct. 5, 2012). For example, "some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost of the residential fee for watching such programming . . . [while] [s]ome courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have

13

paid the plaintiff . . . [and] [o]ther courts award a flat amount for a violation." *Id.* "The Fourth Circuit has not addressed any of these methods." *Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc.*, C/A 4:10-801-TLW-SVH, 2010 WL 5141768 (D.S.C. Oct. 1, 2010), *report and recommendation adopted*, 4:10-CV-801-TLW-SVH, 2010 WL 5137134 (D.S.C. Dec. 10, 2010). However, courts have uniformly recognized that "a firm judicial hand is required to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately." *J & J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 677 (D.S.C. 2011).

With respect to statutory damages pursuant to 47 U.S.C. § 553 (c)(3)(A)(ii), Plaintiff requests an award of $3,300, which equals three times the $1,100 licensing fee that Defendants would have had to pay to legally air the Program. South Carolina district courts have often used an iteration of the license fee to calculate appropriate damages. *See Joe Hand Promotions, Inc. v. Precint Bar-DAXLAM, Ltd.*, 3:10-CV-00199-CMC, 2010 WL 3420189 (D.S.C. Aug. 23, 2010) (determining that an award of $5,000 was appropriate, which equaled five to six times the license fee of $875, as such award "is a sufficient deterrent"); *Sheedy*, 2011 WL 4089534 (determining that an award of $5,000 was appropriate, which equaled approximately 5 times the license fee of $975). The court finds that an award totaling three times the applicable license fee effectively promotes deterrence in this instance. Accordingly, the court finds that Plaintiff's requested award of $3,300 is an appropriate statutory damage award.

With respect to enhanced statutory damages pursuant to 47 U.S.C. § 553(c)(3)(B), Plaintiff requests an award of $6,600, which equals two times the $3,300 award of statutory damages. "In determining whether the Defendants' conduct was willful and enhanced damages are justified, courts typically consider certain factors, including (1) repeated violations over an extended period of time;

14

(2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks." *J.R. 'Z Neighborhood Sports Grille, Inc.*, 2010 WL 1838432, at *2. However, courts have allowed enhanced damages where none of these factors are demonstrated. *See id.* (recognizing that despite the plaintiff presenting "no evidence that the Defendants' actions [met] any of the [relevant] factors," enhanced damages were still appropriate to promote deterrence).

There is no evidence in the record that Defendants advertised the broadcast of the Program, charged an admission fee or premiums for food and drink, or received substantial unlawful monetary gains from broadcasting the Program. However, at the hearing, Defendants conceded that they had, on one previous occasion, aired a closed-circuit program without paying the license fee. Based on Defendants' prior engagement in similar conduct, the court finds that an enhanced damages award is merited to promote deterrence. However, the court finds that Plaintiff's requested award of $6,600 is not appropriate, as there is no evidence to support three of the four enhanced-damages factors and the record only evidences one prior violation. Accordingly, the court finds that a nominal award of $100 is an appropriate enhanced damage award.

Plaintiff also requests an award of costs and attorneys' fees pursuant to 47 U.S.C. §553(c)(2)(C). Section 553 provides that the court may "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2)(C). As the rightful owner of the Program broadcast rights, the court finds that Plaintiff is properly classified as an aggrieved party who has prevailed under Section 553. Further, the court finds that an award of costs and reasonable attorneys' fees pursuant to 47 U.S.C. § 553(c)(2)(C) is appropriate in this action to promote deterrence. Pursuant to this finding, the court will allow Plaintiff fourteen

15

(14) days from the date of this order to submit documentation of its costs and attorneys' fees. The court will further allow Defendants seven (7) days from the date of Plaintiff's filing to file any opposition to the submitted documentation.

        2.        Plaintiff's Conversion Claim

              *a.*        ***Liability under Plaintiff's Conversion Claim***

Plaintiff seeks summary judgment on its state law conversion claim against all Defendants. "Conversion is defined as the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Moseley v. Oswald*, 376 S.C. 251, 254, 656 S.E.2d 380, 382 (2008). Under South Carolina law, "to prove the tort of conversion, the plaintiff must establish either title to or right to the possession of the personal property." *Joe Hand Promotions, Inc. v. Pee Dee Benevolent Soc'y, Inc.*, 4:11-CV-2022-TLW-TER, 2012 WL 2178706, at *6 (D.S.C. Mar. 12, 2012), *report and recommendation adopted*, 4:11-CV-2022-TLW-TER, 2012 WL 2178629 (D.S.C. June 13, 2012). South Carolina district courts have recognized conversion as a viable claim for the type of property involved in this action. *See id.* (granting summary judgment in favor of the plaintiff on a claim for conversion where the plaintiff held an exclusive license to a program and the defendant broadcasted the program without permission from the plaintiff).

Here, undisputed evidence indicates that Plaintiff owned the exclusive license to the Program, and Defendants unlawfully violated Plaintiff's rights by broadcasting the Program without paying the license fee. The court finds that "[t]he evidence in the record is sufficient to show that Defendants are liable for conversion." *Sheedy*, 2011 WL 4089534, at *3. As such, the court finds that summary judgment is appropriate on Plaintiff's conversion claim.

16

Accordingly, Plaintiff's motion for summary judgment is granted with respect to its state law conversion claim against all Defendants.

### b.     *Damages under Plaintiff's Conversion Claim*

Generally, "the damages for conversion of personal property amount to the value of the property with interest." *Pee Dee Benevolent Soc'y, Inc.*, 2012 WL 2178706, at *6. In similar scenarios, courts have interpreted this value to encompass the amount that a defendant would have had to pay for a commercial sublicense to legally air the program. *See Todd*, 2012 WL 2178851, at *3 (finding the appropriate damages on the plaintiff's conversion claim to be $1,100, calculated by the licensing fee the defendants would have had to pay for an establishment with a 75-person capacity); *Sheedy*, 2011 WL 4089534, at *3 (finding the appropriate damages on the plaintiff's conversion claim to be $975, calculated by the licensing fee the defendants would have had to pay for an establishment with a 110-person capacity). Here, the applicable licensing fee for Defendants' establishment, which has a 90-person capacity, would have been $1,100.

However, the court recognizes that Plaintiff cannot recover damages under both its statutory claim and its state law conversion claim. Indeed, "recovery under both § [553] and the tort of conversion would result in an impermissible double recovery for the same loss." *Joe Hand Promotions, Inc. v. Flamingo's Food & Spirits, L.L.C.*, CIV.A. 0:11-2431-MBS, 2012 WL 2048192, at *2 (D.S.C. June 5, 2012). Thus, Plaintiff must "elect between recovery on the statutory (Section [553]) claim and the conversion claim." *Precint Bar-DAXLAM, Ltd.*, 2010 WL 3420189, at *4. Accordingly, the court orders Plaintiff elect between recovery of statutory damages under Section 553 or actual damages under its state law conversion claim within fourteen (14) days of the date of this order.

## IV. CONCLUSION

Based on the foregoing, the court hereby **DENIES** Defendants' motion for summary judgment, ECF No. 66, and **GRANTS** Plaintiff's motion for summary judgment, ECF No. 67, as to all Defendants. Pursuant to this order, the court awards either (1) statutory damages in the amount of $3,300 pursuant to 47 U.S.C. § 553(c)(3)(A)(ii) and enhanced statutory damages in the amount of $100 pursuant to 47 U.S.C. § 553(c)(3)(B) or (2) actual damages in the amount of $1,100 on Plaintiff's conversion claim. The court orders Plaintiff to elect between recovery of statutory damages under Section 553 or actual damages under its state law conversion claim within fourteen (14) days of the date of this order. The court further orders that Defendants are jointly and severally liable for the damage award elected by Plaintiff.

With respect to Plaintiff's request for attorneys' fees and costs pursuant to 47 U.S.C. § 553(c)(2)(C), the court will allow Plaintiff fourteen (14) days from the date of this order to submit documentation of its attorneys' fees and costs. The court will further allow Defendants seven (7) days from the date of Plaintiff's filing to file any opposition to the submitted documentation.

**IT IS SO ORDERED.**

                                              s/Margaret B. Seymour
                                              Margaret B. Seymour
                                              Senior United States District Judge

Columbia, South Carolina
March 13, 2014